## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )      Case No.: 1:09-cr-134 |
| PHILIP WINDOM OFFILL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On April 7, 2009, Defendant Philip Windom Offill filed a Motion for Change of Venue (Dkt. No. 11) arguing that venue should be changed to the Northern District of Texas. Mr. Offill did not notice this motion for a hearing, nor did he file a reply to the Government's response brief. On June 2, 2009, the Court denied Mr. Offill's motion with a memorandum opinion to follow. In this memorandum opinion, the Court explains its reasoning in further detail.

Defendant Offill was a practicing attorney in Dallas, Texas. The indictment alleges that he conspired to perpetrate a complicated scheme to evade SEC registration requirements and manipulate the stock price of companies on the national market. To effectuate this fraud scheme, the co-conspirators committed numerous overt acts within this District, including sending email and fax communications, issuing fraudulent press releases, and transferring money obtained by fraud to a bank account here. Four of Mr. Offill's co-conspirators already have been prosecuted in this District.[1] For these reasons, in addition to those articulated below, the Court denies Mr. Offill's motion to transfer.

---

[1] *See United States v. Gregory Neu*, 1:06-cr-444; *United States v. Stephen Luscko*, 1:06-cr-443; *United States v. Justin Medlin*, 1:07-cr-341; *United States v. David Stocker*, 1:09-cr-118.

## I.    Background.

The indictment charges Mr. Offill with participating in an illegal stock fraud scheme.

Allegedly, Mr. Offill and his co-conspirator David Stocker provided stock promoters Greg Neu

and Steve Luscko with millions of shares of unrestricted stock while evading SEC registration

requirements.  Offill is charged with conspiracy to commit securities registration violations with

regard to nine separate companies, conspiracy to manipulate the price of three of those

companies,[2] and nine substantive counts of wire fraud relating to these schemes.

During the time frame of this conspiracy, Rule 504 of Regulation D of the Securities Act

of 1933 permitted a company issuing stock to sell up to $1 million in stock to "accredited

investors," so long as the sale complied with a state law exemption.  Texas law contained such an

exemption.  Texas law allowed a company to sell securities to a Texas accredited investor if the

investor purchased the shares with "investment intent."  Investment intent was presumed if the

accredited investor held the share for twelve months *or* sold the shares to other accredited

investors.

The indictment alleges that Offill and Stocker, both of whom were attorneys, devised a

two-step transaction to evade federal registration requirements.  In the first step, they arranged for

a fictitious "sale" of shares by the companies issuing stock.  These shares were sold to

"accredited investors" that actually were entities set up and controlled by Offill.  In the second

step, Offill and Stocker caused the transfer of those shares to their co-conspirators.  Under federal

securities laws, these co-conspirators could not have purchased the shares directly from the

issuing companies.  Offill was paid $2500 per transaction.  The co-conspirators were then

---

[2]  These three companies are Emerging Holdings, MassClick, and China Score.

supposed to sell the (unrestricted and unregistered) shares to the general investing public, which they would not have been allowed to do but for the pass-through using Offill's companies. Offill and his co-conspirators allegedly attempted to conceal this scheme through publishing false and fraudulent documents supporting the transactions.

With regard to Emerging Holdings, MassClick, and China Score, Neu and Luscko retained Stocker as corporate counsel. Stocker incorporated the companies. Offill, through his Texas-based shell companies, was the first-tier accredited investor. He and Stocker drafted fraudulent opinion letters and stock subscription agreements (one of which was executed in Virginia) to give the appearance of compliance with Rule 504. This appearance of propriety was necessary so that the stock would trade on the open market without raising suspicion. In the subscription agreement, Offill falsely claimed that the entity under his control was purchasing the stock with investment intent, when in reality he planned to transfer those shares to co-conspirators within days for sale to the general investing public. Greg Neu, Steve Luscko, and their associates then "pumped up" the share prices through spam emails and press releases containing false statements about the companies. Once the stocks started trading, the co-conspirators dumped their shares for a substantial profit.

One of these companies, Emerging Holdings, was located within this District in Reston, Virginia. Mr. Offill drafted and signed a subscription agreement to purchase Emerging Holdings stock, and this agreement was signed by the company's president in Virginia. Numerous documents, emails, and faxes were sent and received in Virginia by and between the co-conspirators and the president of Emerging Holdings. The promotional campaigns for the fraud included "spam" email sent through AOL computer servers located in this District. Finally,

3

numerous victim investors are located within this District.

## II.    Legal Standards.

Article III, Section 2 of the Constitution provides that "the Trials of all Crimes . . . shall
be held in the State where the said Crimes shall have been committed." "Congress has
implemented this clause with 18 U.S.C. Section 3237(a), which authorizes prosecution of a crime
involving more than one district in any district in which the offense 'was begun, continued, or
completed.'" *United States v. Martinez*, 901 F.2d 374, 376 (4th Cir. 1990). Moreover, in a
multi-district conspiracy, venue is proper in any district in which a conspirator has committed an
overt act. *Id.* "[W]hen a conspiracy is formed in one district and overt acts are taken in
furtherance of it in other districts, venue is proper against all of the defendants in any one of
those districts." *United States v. Heaps*, 39 F.3d 479, 482 (4th Cir. 1994) (citing *United States v.
Levy Auto Parts*, 787 F.2d 946, 952 (4th Cir.), *cert. denied*, 479 U.S. 828 (1986)).

Even where venue is constitutionally grounded in one judicial district, the Federal Rules
of Criminal Procedure permit a district court to transfer a criminal case to another judicial district
"[f]or the convenience of the parties and witnesses, and in the interests of justice." Fed. R. Crim.
P. 21(b). A transfer of venue is within the "sound discretion of the district court," and the
decision is reviewed for abuse of discretion. *Heaps*, 39 F.3d at 482. The defendant bears the
burden of proving that a transfer is appropriate. "For a defendant to succeed on a [Rule 21(b)
motion to transfer], the defendant must demonstrate that prosecution of the case in the district
where the count was properly filed would 'result in a substantial balance of inconvenience' to the
defendant." *United States v. Ferguson*, 432 F. Supp. 2d 559, 562 (E.D. Va. 2006).

4

In *Platt v. Minnesota Mining & Mfr'ing Co.*, 376 U.S. 240, 243-44 (1964), the Supreme Court articulated ten factors for consideration in evaluating a Rule 21(b) transfer motion:

      (I) location of the defendants;

      (ii) location of possible witnesses;

      (iii) location of the events at issue;

      (iv) location of documents and records;

      (v) disruption of the defendant's business;

      (vi) expense to the parties;

      (vii) location of counsel;

      (viii) relative accessability of place of trial;

      (ix) docket condition of each district;

      (x) any other special elements that might affect the transfer.

The Fourth Circuit follows the *Platt* factors in deciding whether to grant a Rule 21(b) transfer motion. *Heaps*, 39 F.3d at 483.

## III.    Discussion.

Applying the *Platt* factors to the allegations in this indictment, the Court holds that venue is proper in this District, and that a transfer to the Northern District of Texas would not be "in the interests of justice." Fed. R. Crim. P. 21(b).

### 1. Location of the defendant.

Because Mr. Offill is located in Texas, this factor weighs in favor of transfer. However, it is not determinative. Criminal defendants have no right to be tried in their home district, "nor

does the location of the defendant's home have independent significance in determining whether transfer to that district 'would be in the interests of justice.'" *United States v. McManus*, 535 F.2d 460 (8th Cir. 1976) (quoting *Platt*, 376 U.S. at 245-246). "Indisputably, any trial will result in some inconvenience to the parties, but mere inconvenience does not mean that a transfer is required in the interests of justice." *United States v. Hays*, 1997 WL 34666, at *2 (E.D. Pa. 1997).

  2. Location of the witnesses.

  "Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *U.S. v. Spy Factory, Inc.*, 951 F. Supp. 450, 456-457 (S.D.N.Y. 1997). Rather, a defendant "must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *Id.* There are two sets of witnesses to be considered under this factor. As to defense witnesses, Mr. Offill has failed to meet his burden because he has not specifically identified any material witnesses who would be inconvenienced or unable to testify at trial in Virginia. *Spy Factory*, 951 F. Supp. at 456. The potential inconvenience to prosecution witnesses weighs against transfer. The investigatory agents who conducted the majority of interviews are located in Washington, DC and Virginia, so a transfer of venue to Texas would result in increased travel and housing costs for these witnesses.

  3. Location of events.

  Count One of the indictment lists numerous overt acts committed in Virginia in furtherance of the conspiracy. These acts include: emails and faxes relating to transactions underlying the fraud sent and received from Virginia; a subscription agreement allegedly

6

containing false information entered into in Reston, Virginia, a press release announcing an

initial public offering of Emerging Holdings issued from Reston, Virginia; a spam email

campaign conducted using computer servers located in Virginia; communications relating to a

co-conspirator's meeting with a representative from the Virginia State Corporation Commission;

a transfer of $1 million dollars derived from the alleged fraud to a bank account in Virginia; a fax

to the Virginia Division of Securities relating to Emerging Holdings.

In addition to underpinning the conspiracy count, many of these acts constitute the wire

fraud charges in Counts 2 through 10 of the indictment, for which the defendant could be liable

under *Pinkerton v. United States*, 328 U.S. 640, 645 (1946) ("a conspirator may be convicted of

substantive offenses committed by co-conspirators in the course of and in furtherance of the

conspiracy"). *See also United States v. Bonetti*, 277 F.3d 441, 447 (4th Cir. 2002) (applying

*Pinkerton*).

Moreover, the fraud scheme allegedly perpetrated by Offill and his co-conspirators

affected the nationwide market. In a multi-district conspiracy, venue is proper in any district in

which a conspirator has committed an overt act. *Martinez*, 901 F.2d at 376. Where a nationwide

fraud scheme is assisted by numerous acts in Virginia, it stands to reason that trying a co-

conspirator in this District is proper. *Hays*, 1997 WL 34666, at *4 (in a "scattered conspiracy"

involving events in multiple districts, the "location of events" factor may be resolved in favor of

the government where venue is constitutionally established). Thus, this factor weighs against

transfer.

4. Location of documents.

According to the prosecution, presently the evidence in this case is located in Alexandria,

7

Virginia and Washington, D.C., and the government is in the process of copying it to a searchable electronic format. Once copied, these electronic documents will be provided to Mr. Offill at his home, thereby removing any potential inconvenience to Mr. Offill based upon the location of the evidence. Consequently, this factor is neutral.

    5. Disruption of defendant's business.

    Any criminal case is likely to disrupt a defendant's business. *See Hays*, 1997 WL 34666, at *4. This is particularly true where the case involves allegations of fraud and the defendant is in the business of providing paralegal services. Mr. Offill's business arguably could be disrupted by a trial in Virginia. The government argues that because a trial for a securities fraud conspiracy is likely to damage Mr. Offill's business reputation, and because a trial near his home in Texas is more likely to receive press coverage than a trial in this District, the disruption of his business might be greater if the case is transferred. This argument is quite logical, albeit somewhat speculative. Given the prospect of unfavorable press coverage, the Court finds that this factor is relatively neutral.

    6. Expense to parties.

    A trial in Texas will impose costs on the government, as the taxpayer would bear the burden of paying for travel, meals, and lodging for the prosecution team, as well as shipping costs for trial materials. On the other hand, motions and trial practice will require Mr. Offill to travel to Alexandria, and undoubtedly this will impose an expense. The government has averred this it will provide discovery materials to Mr. Offill at its own expense in an electronic, searchable format. Mr. Offill claims that his assets are restrained, including about $4000 in his bank accounts, but the government has expressed a willingness to release certain assets for

8

litigation expenses on the condition that the defendant file a financial affidavit outlining his assets and liabilities. The government also notes that it does not oppose telephonic hearings for non-evidentiary motions.

In light of these concessions, which will defray some of the costs facing the defendant, and the significant costs to the taxpayers if the case is tried in Texas, the Court finds that this factor weighs against transfer.

7. Location of counsel.

Obviously, trial in Alexandria will be more convenient for government counsel. Government counsel has a long-standing investment of time and resources through a multi-year investigation and four prosecutions relating to this alleged conspiracy. As to convenience for Mr. Offill, at arraignment the Court told him that he could obtain quality local counsel from the Public Defender's Office for the Eastern District of Virginia. He has not availed himself of that option. Instead, he has located counsel in Texas, but states that the attorney will represent him only if the trial is held in Texas. As this Court explained in *United States v. Lindh*, "the fact that [Lindh's counsel] reside in California rather than in this district is an inconvenience of his own choosing. No claim is made, or can be made, that competent and experienced counsel cannot be found in this District. Of course, Lindh has a Sixth Amendment right to select competent and experienced counsel from another district, which he has done, but he is not entitled to rely on the exercise of that right to effect a change of venue." 212 F. Supp. 2d 541, 551-552 (E.D. Va. 2002). This reasoning applies with equal force here.[3]

---

[3] On July 8, 2009, this Court granted Mr. Offill's motion to appoint counsel from the Federal Public Defender's office here in Alexandria, Virginia. As such, both sets of counsel are now located in this District.

9

8. Accessibility of place of trial.

This courthouse is surrounded by hotels and within walking distance of public transportation to a major airport. Comparatively, the U.S. Courthouse in the Northern District of Texas in Dallas is somewhat less accessible, located about 20 minutes from the Dallas-Fort Worth International Airport. This factor tips slightly in favor of the government.

9. Docket condition of the districts.

According to the most recent statistics, the Eastern District of Virginia has a median time of 9.7 months from filing to disposition of a criminal case by trial.[4] The comparable time in the Northern District of Texas is 13.2 months. Transferring the case to Texas could result in a modest delay. Moreover, the fact that four of Mr. Offill's co-conspirators have been prosecuted in this District weighs against transfer on the grounds of judicial economy.

10. Special considerations.

It is significant that four of Mr. Offill's co-conspirators have been prosecuted in this District for several reasons. First, other judges in this District already have found this to be an appropriate venue for similar cases. Second, to the extent this case involves overlapping or similar evidence and witnesses, the government may conserve resources by prosecuting the case here. Finally, since all of these prosecutions arise from the same conspiracy and fraud scheme, disposing of the cases in a unified manner is advisable. *See United States v. Smallwood*, 293 F. Supp. 2d 631, 640 (E.D. Va. 2003) (where co-conspirators already have been prosecuted in the charging district "it is reasonable for the government to conserve resources by charging and trying the remaining co-conspirators in this district).

---

[4] *See* Judicial Business of the U.S. Courts, 2008 Annual Report, Table D-6.

In sum, it is clear that the majority of factors weigh against transferring the case. Most significantly, the location of witnesses, location of events, and location of counsel factors weigh heavily against a transfer, and Mr. Offill's alleged co-conspirators already have been prosecuted here. According, the Court finds that Mr. Offill has not demonstrated "a substantial balance of inconvenience," and transfer is not appropriate. *Ferguson*, 432 F. Supp. 2d at 562.


**IV.    Conclusion.**

For the foregoing reasons, the Court has denied Mr. Offill's motion to change venue under Rule 21(b).


June 10, 2009
Alexandria, Virginia

                                        /s/
                                  Liam O'Grady
                                  United States District Judge

11