# EXHIBIT A



U.S. Department of Justice

United States Attorney
Eastern District of Virginia

2100 Jamieson Avenue  Tel:(703) 299-3849
Alexandria, Virginia 22314  Fax: (703) 299-3982
Email:patrick.stokes@usdoj.gov

December 21, 2009

**BY INTEROFFICE MAIL AND EMAIL**

Kevin Brehm, Esq.
Todd Watson, Esq.
Office of the Federal Public Defender
1650 King Street, Ste. 500
Alexandria, VA 22314

   Re: *United States v. Phillip Offill* Crim. No. 1:09CR134 (LO)

Dear Counsel:

  The purpose of this letter is to disclose the government's expert witnesses pursuant to the discovery order entered in this case and Rules 702, 703 and 705 of the Federal Rules of Evidence.

  Professor Steven Thel will testify as the government's expert witness in matters relating to the registration and sale of securities and the federal securities regulation system. Prof. Thel is the I. Maurice Wormser Professor of Law at Fordham University School of Law. He has testified in several criminal cases, both for the prosecution and the defense, as an expert in securities regulation and practice and corporate practice. I have enclosed a copy of his resume.

  The scope of Prof. Thel's testimony will cover all counts in the indictment and will provide an overview of the federal securities regulation system and specific procedures by which securities may be issued and sold. More specifically, it is anticipated that Prof. Thel will testify to:

  a. The general purposes and operation of the Securities Act of 1933 and the Securities and Exchange Act of 1934 and the role of the SEC and the NASD in securities regulation;

  b. The definition of what a security is and the process by which a company or issuer may offer and distribute securities, including the requirement that the security be registered with the SEC or offered pursuant to an exemption from registration, the conducting of a public or private offering, and the issuance of restricted or unrestricted shares of stock;

c. The purpose, process and general costs of registering a stock with the SEC, including the filing of a registration statement and preparation of supporting documentation, and the definitions and roles of underwriters, dealers, and the general investing public in the offering and selling of stock;

d. That an issuer may sell unregistered stock pursuant only to an exemption from the registration requirements; the general purposes behind registration exemptions and an issuer's considerations for conducting an exempt offering;

e. The general difference between issuer exemptions like Rule 504 of Regulation D and non-issuer transactions such as Section 4(2) of the Securities Act of 1933 or Rule 506 of Regulation D;

f. The manner and procedure for conducting exempt transactions, including offerings pursuant to Rule 504 of Regulation D; the purpose of Rule 504 to allow for limited private offerings to raise capital for a business, a typical transaction relying on Rule 504, and the requirements and limitations of Rule 504 including the role and definition of accredited investors, and the limitation on the amount of money that can be raised;

g. The interaction between Federal and state securities regulations generally and specifically in the case of Rule 504 and the fact that securities offering must comply with both Federal and state regulations;

h. The fact that a Rule 504 exemption is not available for transactions involving underwriters or transactions that are part of a plan to evade registration; that the SEC looks to the substance of a transaction, not the form it takes, to determine whether it is in compliance with the securities laws, particularly under Rule 504; that individuals cannot avoid requirements of the securities laws, in particular the requirements of Rule 504, by breaking a transaction into a series of transactions (or steps) to give the appearance of compliance;

i. That Rule 504 has been a frequent target of abuse for those attempting to evade federal registration requirements;

j. Restrictions placed on the resale of securities issued pursuant to a registration exemption, particularly Rule 504, and the need for an exemption for every transaction involving a security, including transactions that do not involve an issuer and where there is no registration statement on file;

k. That indicia of evasion of registration requirements include the use of step transactions or sham sales designed to disguise the purpose of the transactions and the connection between the parties to the transactions, the use of nominee and shell companies, delivery of securities as compensation to stock promoters; the

quick sale of otherwise restricted shares to the marketplace, a pattern of issuance and sale to the general investing public of restricted securities, investors receiving payment (through funds or free shares) to act as an investor, and the documentation of transactions to give the appearance of compliance with the securities laws that does not in fact describe how the transactions transpired;

l.  Prof. Thel will offer his opinion that Rule 504 does not permit the issuance of unregistered securities, as described in the indictment, if the purpose of the issuance is to evade the registration requirements, that Rule 504 does not create "free-trading" or unrestricted shares, that no exemption permits the sale of unregistered shares from one accredited investor to another where the sales or transfers are part of or steps in a public distribution, that persons involved in a series of transactions intended to in fact cause a public distribution, as defined in 15 U.S.C. § 77b(11), are underwriters; and that the transactions described in the indictment were public distributions;

m.  A description of Pink Sheets and the over-the-counter (OTC) securities markets as they differ from the national exchanges, the contrasting types of disclosures companies must make/file if trading on an OTC market or a national exchange, and the lesser scrutiny given to these markets by the SEC and NASD;

n.  The hallmarks of and how prices are set in a manipulated market as contrasted with an un-manipulated market; the general nature of securities manipulation schemes and some of the indicia of and techniques used to manipulate securities including: the use of shell companies, nominees, false statements to transfer agents, coordinated trading, matched trades, painting the tape, front running, walking up the price of a security, the issuance of false or misleading material information about a stock and the use of spam email and fax campaigns, controlling the float of available stock. Prof. Thel may opine that the use of these techniques is designed to boost price and trading volume of securities so that the perpetrators of the scheme can sell their shares to investors in an artificially inflated market;

o.  Reasons why stocks on OTC markets are more frequent targets of manipulation schemes than those on national exchanges, including because of less stringent disclosure requirements for companies, lesser regulation, the lower volume of trading, lack of stock analyst coverage, and the greater ability to control the float or corner the market.

Prof. Thel's opinions are based on his study, training, and experience as a professor of securities law and as an attorney with the U.S. Securities and Exchange Commission. These experiences include approximately 20 years of teaching courses on securities regulation and corporate finance where the subject matter of courses included private placement exemptions generally and Rule 504 specifically. Prof. Thel has published articles and a treatise relating to

3

both securities regulation and manipulation. He served in the Securities & Exchange Commission, Office of the General Counsel, Enforcement & Disclosure Policy Group where he was an attorney-advisor working on the predecessor regulation to Regulation D.

## II. Denise Voigt Crawford

Ms. Crawford will testify as the government's expert witness in matters relating to the registration and sale of securities and the Texas State securities regulation system. Presently, Ms. Crawford is the Commissioner of the Texas State Securities Board. Commissioner Crawford's *curriculum vitae*, which outlines her education, training, and experience, is attached hereto and incorporated by reference into this notice. It is anticipated that Ms. Crawford will testify to:

- a. The general purpose and operation of Texas state securities laws, including the purpose and process of registration of securities offered for sale; the relationship between state and federal securities regulations generally;

- b. The definition of what a security is and the process by which a company or issuer may offer and distribute securities, including the requirement that the security be registered with the Texas State Securities Board or offered pursuant to an exemption from registration, the conducting of a public or private offering, and the issuance of restricted or unrestricted shares of stock;

- c. The general purpose and process of exemptions from the registration requirement for certain types of offerings and issuer's considerations for conducting such an offering;

- d. How Texas and federal securities laws, including the exemptions from registration found in Rule 504 and 7 Texas Administrative Code (TAC) § 139.19, relate to one another; that, although a transaction may be in compliance with Texas securities regulations, it still must comply with Federal securities regulations or that Texas law does not exempt an issuer from Federal securities requirements;

- e. The purpose and process of the exemptions from registration pursuant to the accredited investor exemptions found in 7 TAC §§ 139.19 and 139.16; the definition and limitations placed on accredited investors, the requirement the accredited investors have investment intent; that the purposes of causing shares to be sold publicly does not qualify as investment intent; and exceptions from the investment intent requirement;

- f. The general difference between issuer exemptions like TAC § 139.19 and non-issuer transactions; the need for an exemption from registration for every transaction where there is no registration statement on file;

- g. Commissioner Crawford may opine that transactions, like those described in

4

paragraph 36 of the indictment, are not exempt from registration under any Texas securities law or rule where the transaction involves the sale or transfer by one accredited investor entity to another accredited investor of securities received from an issuer pursuant to § 139.19 less than 12 months earlier;

h. That the Texas State Securities Board looks to the substance of a transaction, not the form it takes, to determine whether it is in compliance with the securities laws; that individuals cannot avoid requirements of the securities laws by breaking a transaction into a series of transactions (or steps) to give the appearance of compliance.

Commissioner Crawford's opinions are based, in part, on her training and experience including her more than fifteen years of service as the Commissioner of the Texas State Securities Board.

### III. Sam Ottensoser

The government intends to call Sam Ottensoser, general counsel of Legend Merchant brokerage company, as a witness at trial. Mr. Ottensoser will testify about his review of documents related to MassClick and the account of Tyson Su at Legend Merchant. Although we do not believe Mr. Ottensoser's testimony will constitute expert testimony, we are providing you notice, out of an abundance of caution, that we may proffer him as an expert pursuant to Rules 702, 703 and 705 of the Federal Rules of Evidence.

Mr. Ottensoser graduated from Harvard Law School in 1967, and he worked at a number of mid-sized law firms in New York, NY, as a lawyer (and partner) until joining Legend Merchant approximately five years ago as general counsel. At law firms, Mr. Ottensoser focused on public and private financings, including under Regulation D of the Securities Act of 1933 (Rules 501, et seq.). Mr. Ottensoser became familiar with the exemptions under Regulation D, including Rule 504, through this experience. Since becoming general counsel at Legend Merchant, Mr. Ottensoser performs general legal duties, structures financings for companies, and works with compliance to ensure trading and account activities do not violate federal securities laws.

In the course of trading of MassClick stock in July and August 2004, Legend Merchant compliance alerted Mr. Ottensoser. Mr. Ottensoser reviewed opinion letters from David Stocker, accredited investor documents, an affidavit from Brian Brunette, corporate documents related to MassClick, a promissory note signed by Su, internal compliance memoranda, and letters and other communications between Randy Fields of Legend Merchant and Stocker, Luscko, Brunette, and Su. These documents were provided to you in discovery.

If Mr. Ottensoser is required to be qualified as an expert at trial, his testimony may include the following:

a. The salient differences between public and private offerings, including the need to file a registration statement in a public offering;

b. That Regulation D provides exemptions from registration, including through limited private offerings under Rule 504, and that Regulation D is designed to permit limited private offerings for investment, not for purposes of facilitating a public distribution of shares;

c. The definition of an accredited investor and his opinion that Su, a resident from Rivington Street in New York City, was not an accredited investor;

d. The nature and purpose of legal opinion letters and subscription agreements in legitimate Regulation D offerings, including the time and expense of preparing and verifying the information in such documents and negotiations associated with issuers and accredited investors entering into subscription agreements;

e. That an accredited investor obtaining shares from an issuer and transferring those shares to another accredited investor on the same day is not consistent with the intent of a Regulation D offering, including one conducted under Rule 504; and

f. The review of the opinion letters, promissory note between MassClick and Su, accredited investor documents, affidavit from Brunette, and the lack of information publicly available about MassClick, the spurious nature of the promissory note, the fact that Su deposited nearly the entire float into a brokerage account within days of the issuance of the shares and within days of opening the account, and the fact that the value of those shares reached several million dollars, led Mr. Ottensoser to the opinion that the MassClick shares were issued as part of a public distribution and that the MassClick share sales were not part of a legitimate offering.

Mr. Ottensoser is out of the office for the holidays and will provide the government with a *curriculum vitae* upon his return in early January. We will provide a copy to you when we receive it. Please do not hesitate to contact us if you have any questions about his testimony or this notice.

        Sincerely,

        Neil H. MacBride
        United States Attorney

        By:    Patrick Stokes
               Ed Power
               Assistant United States Attorneys